OPINION OF THE COURT
Per Curiam.
Final judgment, entered on or about May 2, 2006, reversed, with $30 costs, and final judgment awarded to petitioner landlord upon its cause of action for possession. Issuance of the warrant of eviction shall be stayed for 30 days from the service of a copy of this order with notice of entry.
Order, dated June 29, 2006, reversed, without costs, and respondent’s motion for attorney’s fees is denied.
Exercising our authority to review the record developed at the nonjury trial and render the judgment warranted by the facts (see Northern Westchester Professional Park Assoc, v Town of Bedford, 60 NY2d 492, 499 [1983]), we award petitioner landlord the possessory judgment sought in the holdover petition upon our determination that respondent David Siegel failed to meet his affirmative obligation of establishing succession rights to the subject rent-stabilized apartment. The operative facts, largely undisputed, are summarized as follows. Within several weeks or “maybe 60 days at the outside” of graduating from high school in Florida in May 1998 respondent came to New York City and stayed at his grandmother’s East 72nd Street, Manhattan apartment. At that time respondent’s grandmother was away from the apartment for medical reasons, as she had been for several months, and was then convalescing at the Dewitt Rehabilitation and Nursing Center in Manhattan, *12 one of a series of extended hospital, rehabilitation and nursing home stays endured by the grandmother from February 1998 until the time of her death in November 2001. Respondent lived in his grandmother’s apartment, “basically alone,” until late August of 1998 when he began attending Columbia University as a full-time student. During the first three years of his matriculation (and prior to his grandmother’s death), respondent lived on campus, “rarely” spending time midweek at the apartment and remaining on campus during “the majority of . . . weekends” while school was in session. Respondent did spend portions of academic intersessions and recesses at the apartment, but acknowledged that he also traveled or stayed at his parents’ Florida home during school breaks. Respondent resumed occupancy of the apartment on a full-time basis upon graduating from Columbia in May 2002, roughly seven months after his grandmother’s death.
In order to qualify for succession rights under the governing regulation (see Rent Stabilization Code [9 NYCRR] § 2523.5 [b] [1]), respondent was required to show that he “resided with the tenant in the housing accommodation as a primary residence” for the two-year period immediately preceding his grandmother’s death. Considering the occasional and incidental nature of respondent’s occupancy during the relevant time period, and given the absence of the requisite showing that respondent shared a “simultaneous tenancy” with his grandmother (see Matter of Glass v Glass, 29 AD3d 347, 349 [2006]), respondent’s succession claim must fail.* In attempting to create a “simultaneous tenancy” where none otherwise was shown to exist, respondent relies on Rent Stabilization Code (9 NYCRR) § 2523.5 (b) (2) (ii), which provides: “[t]he minimum periods of required residency set forth in this subdivision shall not be deemed to be interrupted by any period during which the ‘family member’ temporarily relocates because he or she . . . (ii) is enrolled as a full-time student.” We find unavailing respondent’s contention that because he was attending college for several years prior to his grandmother’s death, the cited Code provision requires a finding that the apartment constituted his actual residence. The cited regulation, whose terms protect from eviction a family *13 member who “temporarily relocates” from a stabilized apartment to attend school and whose residency would otherwise be “interrupted” by the relocation, cannot be read so broadly as to allow a would-be successor to avoid the Code residency requirements altogether, in this case by staking a claim to a stabilized apartment through a transitory presence first commenced weeks before going off to college. Respondent’s initial connection to his grandmother’s apartment — by respondent’s own account a stay lasting a matter of weeks and spent “basically alone” — was too fleeting and ephemeral to constitute the type of residency that the Code’s educational absence exemption was intended to protect from “interruption]” during a period of “temporar[y] relocation].” Adoption of the contrary construction urged by respondent would hardly serve to further the underlying purpose of the Code’s family succession provisions: to avoid “the harsh consequences resulting from displacement from one’s home upon the death or departure of a named tenant with whom a family member, not named in the lease, resided.” (Lesser v Park 65 Realty Corp., 140 AD2d 169, 171 [1988], lv dismissed 72 NY2d 1042 [1988].) Inasmuch as respondent otherwise failed to establish that he lived with his grandmother as a family unit for the requisite two-year period specified by the Code, he does not come within its protective aegis.
In light of our disposition, a recovery of attorney’s fees by respondent is necessarily precluded.
McKeon, EJ., Davis and Heitler, JJ., concur.

 While the trial evidence shows that tenant’s persistent health problems often prevented her from living in the apartment for weeks or months at a time until her final hospitalization and convalescence in December 2000, we focus not on her occupancy, but on respondent’s use of the premises in determining whether respondent fulfilled the Code’s residency requirements (see Fourth Lenox Terrace Assoc, v Wilson, 15 Misc 3d 113 [2007]).